## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC., | Motion Return Date: January 16, 2024 |
| Plaintiff, | |
| v. | |
| NOVITIUM PHARMA, LLC, | Case No. |
| Defendant. | *Document Filed Electronically* |
| | **Oral Argument Requested** |

## BRIEF IN SUPPORT OF PLAINTIFF AZURITY'S
## MOTION TO ENFORCE SUBPOENAS

Arnold B. Calmann
Katherine A. Escanlar
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
T: (973) 622-3333
abc@saiber.com
kescanlar@saiber.com

*Attorneys for Plaintiff*
*Azurity Pharmaceuticals, Inc.*

# **TABLE OF CONTENT**

I.      Preliminary Statement ................................................................2

II.     Factual Background .....................................................................2

        A.      The Parties....................................................................2

        B.      The Litigation Against Bionpharma.......................................3

        C.      The Subpoenas Seek Information Relevant to the Bionpharma
                Litigation Which Azurity Cannot Obtain Via Party Discovery............7

III.    Legal Standard ..........................................................................10

IV.     Argument ...............................................................................14

        A.      The Information Sought Via the Subpoenas is Highly Relevant........14

        B.      Novitium Has Not and Can Not Meet the Heavy Burden to
                Show That the Subpoenas Are Unreasonable Or Oppressive............17

        C.      None Of the Remaining Factors Demonstrate That Novitium
                Should Be Excused From Compliance ...............................22

V.      Conclusion .............................................................................22

# TABLE OF AUTHORITIES

*Coactive Capital Partners, Inc. v. Printfacility, Inc.*, Civil Action No.
    12-00235, 2013 U.S. Dist. LEXIS 109589 (D.N.J., Aug. 5,
    2013) ..................................................................................................10

*DIRECTV, Inc. v. Richards*, Civ. No. 03-5606 (GEB), 2005 U.S. Dist.
    LEXIS 43764 (D.N.J., June 22, 2005) ........................................11, 18

*HMV Indy, LLC v. Inovateus Solar, LLC*, Case No. 2:20-mc-52-JDW,
    2020 U.S. Dist. LEXIS 114685 (E.D. Penn. June 29, 2020) .................17, 21

*ITT Electro-Optical Prods. Div. of ITT Corp. v. Electronic Tech.
    Corp.*, 161 F.R.D. 228 (D. Mass April 20, 1995)........................................11

*Jackson v. Aragon Adver., LLC*, No. 4:23-MC-00812, 2023 U.S. Dist.
    LEXIS 201988 (M.D. Penn. Nov. 9, 2023)....................................................13

*Malibu Media, LLC v. Doe*, Civil Action No. 15-8252, 2016 U.S.
    Dist. LEXIS 92069 (D.N.J., July 14, 2016) ..................................................14

*Pfizer, Inc. v. Mylan Labs., Inc.*, 02 CV 1628 (W.D.Pa.), M8-85, 2003
    U.S. Dist. LEXIS 24806 (S.D.N.Y. Dec. 17, 2003). 11, 12, 16, 17, 18, 19, 21

*Schmulovich v. 1161 Rt. 9 LLC*, Civil Action No. 07-597 (FLW), 2007
    U.S. Dist. LEXIS 59705 (D.N.J., Aug. 15, 2007) ..................................13, 14

*Silvergate Pharms., Inc. v. Bionpharma Inc.*, 2021 WL 1751148 (D.
    Del. Apr. 29, 2021), *aff'd sub nom. Azurity Pharms., Inc. v.
    Bionpharma Inc.*, 2022 WL 703903 (Fed. Cir. Mar. 9, 2022) ......................4

Pursuant to FED. R. CIV. P. 45, Azurity Pharmaceuticals, Inc. ("Azurity") respectfully asks the Court to enforce subpoenas issued against Novitium Pharma, LLC ("Novitium") relating to ongoing litigation in the District of Delaware.

As we shall explain, but for Novitium's contradictory procedural positions, this application could have been heard by the District of Delaware. However, Novitium's utter lack of cooperation and repeated failures to meaningfully produce any documents (other than a mere *four* invoices) over the course of thirteen months has compelled Azurity to now seek relief in this Court.

Novitium manufactures and supplies a generic drug product for the counterclaim-plaintiff in the underlying Delaware litigation (Bionpharma, Inc. ("Bionpharma")). Azurity's subpoenas seek supplier-discovery from Novitium. The burden on Novitium is slight and the subpoenas seek highly relevant, specific categories of documents and deposition testimony. Azurity also seeks its reasonable costs in bringing this motion.[1]

For the reasons that follow, Azurity respectfully requests this Court compel Novitium's immediate compliance and full production of the subpoenaed documents without further objections.

---

[1] Azurity reserves the right to seek costs in connection with this motion.

1

## I.    PRELIMINARY STATEMENT

Azurity develops and patents pharmaceutical products. Novitium is a pharmaceutical company currently contracted by Bionpharma to manufacture a product generic to one of Azurity's products (the pediatric heart medication, Epaned®). Bionpharma's relationship with Novitium vis-à-vis generic Epaned® is relevant to ongoing antitrust litigation in the District of Delaware between Azurity and Bionpharma. Azurity filed this motion to enforce Azurity's subpoenas on Novitium seeking supplier-discovery relevant to that litigation.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Azurity is a pharmaceutical company headquartered in Massachusetts and incorporated in Delaware. Azurity specializes in providing safe, innovative, high-quality products that address the specific needs of underserved patients. *See* Azurity, "About Us," https://azurity.com/about-us/. Azurity holds NDA No. 208686 for a ready-to-use oral solution of enalapril maleate, which is prescribed and sold under the trade name Epaned®. Epaned® is the first FDA approved ACE inhibitor treatment that is a ready-to-use oral enalapril solution. Epaned® is approved for hypertension in children one month of age and older and is also indicated to treat hypertension, heart failure, and asymptomatic left ventricular dysfunction in adults. Azurity holds several patents for Epaned®, including Patent Nos. 11,040,023 (the "'023 patent) and 11,141,405 (the "'405 patent").

2

Novitium is a generic pharmaceutical company headquartered in New Jersey and incorporated in Delaware. Novitium develops, manufactures, and sells varying doses of generic versions of at least 36 branded pharmaceutical products. *See* Novitium, "Our Products," https://novitiumpharma.com/products/. Novitium has two facilities that are approved by the FDA to manufacture pharmaceuticals, both of which are in New Jersey. *See* Ex. A (FDA Drug Establishments Current Registration Site).[2]

Bionpharma is also a generic pharmaceutical company headquartered in New Jersey and incorporated in Delaware. Bionpharma likewise develops and sells varying doses of generic versions of several products, including a generic to Epaned®. As described in further detail below, Bionpharma and Azurity have been engaged in litigation relating to generic Epaned® for several years. Earlier this year, Bionpharma contracted with Novitium to manufacture and supply generic Epaned®.

**B.    The Litigation Against Bionpharma**

In 2018 and 2019, Azurity's predecessor-in-interest (Silvergate Pharmaceuticals, Inc., for simplicity also referred to as "Azurity") filed actions against Bionpharma in the District of Delaware. Azurity alleged infringement of certain patents covering an enalapril oral liquid formulation. *See* C.A. Nos. 18-1962,

_____

[2] "Ex. __" refers to exhibits to the Declaration of G. Kaufman filed concurrently herewith.

19-1067 (D. Del.). After trial, Judge Stark determined that Bionpharma did not infringe these patents because the patents required a buffer, and Bionpharma's product did not have a buffer. *See Silvergate Pharms., Inc. v. Bionpharma Inc.*, 2021 WL 1751148, at *1 (D. Del. Apr. 29, 2021), *aff'd sub nom. Azurity Pharms., Inc. v. Bionpharma Inc.*, 2022 WL 703903 (Fed. Cir. Mar. 9, 2022).

On June 22, 2021, Azurity filed a separate action against Bionpharma in the District of New Jersey, alleging infringement of an additional patent, the '023 patent. *See* C.A. No. 21-12870, ECF 1. That action was transferred to Delaware where Azurity filed an action in the District of Delaware alleging infringement of one more patent that had recently issued, the '405 patent. C.A. No. 21-1455, ECF 1.

Bionpharma filed counterclaims alleging violations of antitrust laws. One aspect of Bionpharma's counterclaims relates to the relationship between Bionpharma and its then-supplier of generic Epaned®, CoreRx, Inc. ("CoreRx"). CoreRx was Bionpharma's supplier for generic Epaned® during the 2018 and 2019 actions. Because CoreRx was making Bionpharma's at-risk commercial product, Azurity also sued CoreRx for infringement.[3] In a settlement, CoreRx agreed to stop its infringement and, thus, to stop making the accused generic Epaned® for Bionpharma. As part of its antirust counterclaim in C.A. No. 21-12870, Bionpharma

---

[3] An "at-risk" launch is one where the generic launches without authorization from the brand and without a final court determination on infringement and validity.

alleges that Azurity engaged in anticompetitive conduct by settling with CoreRx such that CoreRx ceased manufacturing for Bionpharma.

In 2022, Bionpharma began searching for a new supplier. Bionpharma contracted with Novitium for the manufacture of its accused generic product. Azurity learned of this through public FDA information and not by any disclosure from Bionpharma.   Thereafter, on October 3, 2022 Azurity sued Novitium—separately from the case against Bionpharma—for infringement in the District of New Jersey.

On November 11, 2022, in the *Azurity v. Bionpharma* action in Delaware, Azurity issued to Novitium one Rule 45 subpoena for documents and one for testimony relating to Novitium's supply of accused product to Bionpharma (Exs. B, C). The document and deposition subpoenas were virtually identical. Novitium responded with objections on December 1, 2022; Novitium refused to provide any of the requested discovery. Ex. D.

Subsequently, at Novitium's request, the *Azurity v. Novitium* action was transferred to Delaware and consolidated with Azurity's case against Bionpharma. By at least the time of the transfer, Novitium was represented by the same counsel as Bionpharma.  Because Novitium was then a party in the Delaware action, Azurity served party discovery on Novitium, identical in all relevant respects to the document requests and deposition topics of the November subpoenas. Exs. E, F. As

with its response to those subpoenas, Novitium refused to meaningfully participate in party discovery. *Id.* Indeed, Novitium's sole contribution to party discovery was the production of **four** invoices, each a page long. Novitium also refused to provide any witnesses for deposition. Azurity attempted to compel Novitium's compliance with party discovery through the procedures in Delaware.

In Delaware, similar to the process and procedure in this Court, parties raise discovery disputes by submitting a joint letter after meeting and conferring. Azurity, Novitium, and Bionpharma engaged in this process: the parties met and conferred on, among other issues, Novitium's deficient responses to Azurity's RFPs and 30(b)(6) requests.  However, due to a decision in a different case on related patents and the Federal Circuit affirmance of that decision, Azurity dismissed its patent claims against Bionpharma and Novitium (resulting in the dismissal of Novitium as a party). Thus, the discovery disputes with Novitium, although *fully ripe and ready for adjudication,* were never ruled upon by the Delaware district court.  Now, Novitium is once again a non-party to the *Azurity v. Bionpharma* action, and the previously-served subpoenas are once again at issue.

Because Bionpharma's antitrust counterclaims remain, Azurity still needs discovery from Novitium, although only a small subset of what Azurity previously requested.  Azurity asked Novitium's counsel (who is also Bionpharma's counsel) if Novitium would consent to the disputes being raised and heard by the Delaware

district court—the very Court that Novitium moved to transfer its case in the District of New Jersey to. However, *mirabile dictu*, Novitium refused, insisting that Azurity spend the time, effort, and cost of raising this as a miscellaneous action before this Court.

Yet, while Azurity was preparing this motion, counsel for Novitium/Bionpharma requested that Azurity tell this Court that Novitium "would not oppose a motion to transfer the dispute to Delaware" when Novitium could have simply consented to having these issues heard in Delaware in the first place. Moreover, despite the fact that the parties have already fully met and conferred on the substantively identical document requests and identical deposition topics, counsel for Novitium/Bionpharma took the unreasonable position that the parties had not met and conferred as to the subpoenas.

### C. The Subpoenas Seek Information Relevant to the Bionpharma Litigation Which Azurity Cannot Obtain Via Party Discovery

Azurity has narrowed its initial set of eighteen document requests and eighteen deposition topics (the substance of each set being identical) to include only information relevant to the antitrust portion of the litigation against Bionpharma in Delaware. Azurity seeks deposition testimony and documents relating to:

> a) Information regarding any difficulties that led to any delays in approving or manufacturing Bionpharma's Epaned® generic (Request No. 6 and Topic No. 6);

7

b) Information relating to pricing, costs, invoices, expenses, and related materials (Request No. 8 and Topic No. 8);

c) Information relating to the '023 and '405 patents (Request No. 9 and Topic No. 9);

d) Information with the FDA regarding approving Novitium as a supplier for Bionpharma's Epaned® generic (Request No. 10 and Topic No. 10);

e) Information relating to negotiations, proposals, solicitations, and similar such materials to manufacture, distribute, or sell Bionpharma's Epaned® generic (Request No. 11 and Topic No. 11);

f) Information related to validation and approval of Novitium as a supplier for Bionpharma's Epaned® generic (Request No. 14 and Topic No. 14);

g) Information relating to the prior and ongoing lawsuits between Bionpharma and Azurity and Novitium and Azurity (Request No. 15 and Topic No. 15); and

h) Information relating to Novitium's decision to supply and manufacture Bionpharma's Epaned® generic and the timing thereto (Request No. 16 and Topic No. 16).

These requests and topics seek information necessary to rebutting Bionpharma's antitrust counterclaims. Request and topics a), d), e), f), and h) each are relevant to rebutting Bionpharma's allegations that Azurity caused Bionpharma

8

harm by interfering with Bionpharma's supply of generic Epaned®. Those requests and topics are also relevant to showing that Bionpharma failed to take reasonable steps to secure its supply of generic Epaned® after losing CoreRx as a supplier. As an example of potentially relevant information, Azurity expects to receive information showing that there were delays in Novitium starting its manufacture of generic Epaned® unrelated to any action by Azurity and information showing that Bionpharma procrastinated or otherwise delayed in its search for a supplier despite knowing that CoreRx would cease supply.

Additionally, request and topics b) and e) are each relevant to rebutting Bionpharma's likely damages theory. For example, Azurity expects to receive information relating to technology transfer costs, estimates of manufacturing costs, negotiations and internal Novitium correspondences relating to such costs, and other types of information that Bionpharma's sales and costs data on its own would not show.

Finally, request and topics c) and g) each are relevant to rebutting Bionpharma's sham litigation antitrust claims. For example, Azurity expects to receive information regarding the enforceability, validity, and strength of Azurity's patent portfolio and of Azurity's litigations vis-à-vis Bionpharma, CoreRx, and Novitium that rebut Bionpharma's allegations.

In addition to being relevant, the information sought via these subpoenas is

9

not something that Azurity can receive through party discovery as this information is not within Bionpharma's possession, custody, or control. These subpoenas seek internal Novitium documents as well as any relevant documents not produced during the time when Novitium was a party. As previously noted, when Novitium was a party, Novitium produced four invoices which demonstrates that responsive documents do in fact exist. Nonetheless, Novitium produced no internal correspondences or analyses. Nor did Novitium offer anyone for deposition on any of the above information. Azurity's only way to obtain this information is from Novitium through these subpoenas.

For the above reasons and the reasons explained below, Novitium should be compelled to respond to the subpoenas by providing documents and deposition testimony.

## III.   LEGAL STANDARD

A party may obtain discovery from non-parties regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The method for doing so is to issue and serve a subpoena on the non-party pursuant to FED. R. CIV. P. 45. "When determining whether to enforce a subpoena and compel the production of documents. . . this Court must consider the relevance and scope of the requested information." *Coactive Capital Partners, Inc. v. Printfacility, Inc.*, Civil Action No. 12-00235, 2013 U.S.

Dist. LEXIS 109589 at *3-*4 (D.N.J., Aug. 5, 2013). "The relevancy requirement has been construed broadly and liberally in order to ensure mutual knowledge of all relevant facts." *DIRECTV, Inc. v. Richards*, Civ. No. 03-5606 (GEB), 2005 U.S. Dist. LEXIS 43764 at * 8 (D.N.J., June 22, 2005) ("The Court finds that the information sought by the subpoena is clearly relevant to the allegations made by DIRECTV. DIRECTV alleges that Richards purchased two devices and received them by mail. . . . As DIRECTV notes, the sale of these primarily illegal devices usually occurs over the Internet, where the use of a credit card is often necessary to complete a transaction. . . . Therefore, the subpoena of credit card records within the designated time frame clearly represents an attempt to gain relevant information.").

The same relevancy rules apply to non-party supplier-discovery: courts generally allow supplier-discovery when the information sought is relevant. *See, e.g., ITT Electro-Optical Prods. Div. of ITT Corp. v. Electronic Tech. Corp.*, 161 F.R.D. 228, 232 (D. Mass April 20, 1995) ("Much of the information sought from K&M [via subpoena] is by ETC is relevant. In its counterclaims against ITT, ETC asserts that ITT misappropriated ETC's designs and proprietary information with respect to the power supply. K&M is and has been the only supplier of power supplies used by ITT under the Omnibus III contract. The information sought could reveal the extent of ITT's communications with K&M regarding ETC's confidential information."); *see also Pfizer, Inc. v. Mylan Labs., Inc.*, 02 CV 1628 (RJC)

11

(W.D.Pa.), M8-85 (JFK), 2003 U.S. Dist. LEXIS 24806 at * 6-*7 (S.D.N.Y. Dec. 17, 2003) (compelling non-party supplier to provide information pursuant to a subpoena).

*Pfizer* is particularly instructive: in that case, Pfizer alleged that Mylan infringed patents on amlodipine besylate formulations and that non-party Reddy supplied amlodipine besylate to Mylan. *Id.* at *3. Pfizer subpoenaed Reddy seeking two categories of information: "(1) information relating to quantities of amlodipine. . . provided to Mylan by Reddy; and (2) any information related to test results. . ." on amlodipine besylate. *Id.* at *4. The Court allowed discovery into both categories of information. Regarding the first category, the Court noted that the underlying "Mylan litigation involves a claim that Mylan used salts provided by Reddy to develop a product that infringes upon [Pfizer's] patents. What salts and the quantities of those salts are certainly relevant to Pfizer's claim." *Id.* at *6. As to the second category, the Court noted that "[t]est results that may indicate that amlodipine besylate proved an unexpectedly superior ingredient to those included in the patents attacked as invalid would provide valuable support in defense of Mylan's charge of obviousness" and that "Pfizer needs Reddy's data to validate its own test results and refute Mylan's criticisms." *Id.* at *6-*7. Thus, suppliers can—and in the context of pharmaceutical litigation, do—have important, relevant, and discoverable information.

Azurity need not demonstrate, however, that the information sought is particularly or extraordinarily relevant, as subpoenas that seek information which is "generally relevant" for the type of litigation at issue are enforced in the Third Circuit. *See, e.g., Jackson v. Aragon Adver., LLC*, No. 4:23-MC-00812, 2023 U.S. Dist. LEXIS 201988 at *3-*4 (M.D. Penn. Nov. 9, 2023) ("Though 'standards for nonparty discovery require a stronger showing of relevance than for party discovery,' Jackson has met this standard. As Jackson notes, and Aragon does not contest, discovery of call lists and related information is generally relevant in TCPA class litigation."). Here, Azurity seeks information generally relevant for rebutting Bionpharma's antitrust claims.

Aside from the relevancy requirement, in the Third Circuit and New Jersey, only "four circumstances exist which require a Court to quash or modify a subpoena," none of which are applicable here. *Schmulovich v. 1161 Rt. 9 LLC*, Civil Action No. 07-597 (FLW), 2007 U.S. Dist. LEXIS 59705 at *4 (D.N.J., Aug. 15, 2007). Those four circumstances are if the subpoena "(i) fails to allow reasonable time for compliance; (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides . . ., (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." *Id.* at *5. Indeed, barring the applicability of one of the four circumstances, a Court "cannot quash a subpoena

that leads to unprivileged, relevant, or admissible evidence." *Id.* at *6.

Regarding burden—the only of the four prongs above which Novitium appears to assert— the party opposing the subpoena "carries the ***heavy*** burden of proving that the subpoena is unreasonable or oppressive." *Id.* at *6. "Courts consider several factors to determine the reasonableness of a subpoena including; the party's need for production, the nature and importance of the litigation, the relevance of the material, the breadth of the request for production, the time period covered by the request, the particularity with which the documents are described, and the burden imposed on the subpoenaed party." *Malibu Media, LLC v. Doe*, Civil Action No. 15-8252, 2016 U.S. Dist. LEXIS 92069 at *10 (D.N.J., July 14, 2016).

## IV.   ARGUMENT

The Court should grant Azurity's motion because the information Azurity seeks is relevant to rebutting Bionpharma's antitrust case against Azurity, while Novitium cannot demonstrate that compliance with the subpoena would be unreasonable or oppressive.

### A.   The Information Sought Via the Subpoenas is Highly Relevant

The subpoenas, as initially issued, sought information relating to Azurity's patent claims and its defenses against Bionpharma's antitrust counterclaims. Now, Azurity has narrowed the scope of its subpoena to seek only specific, discrete information relating to the antitrust claims.

14

This information is highly relevant because Bionpharma is claiming injury stemming from its soured relationship with CoreRx. Bionpharma blames Azurity for that souring and, more relevant to the discovery sought here, Bionpharma alleged an inability to timely and cost-effectively secure another supplier. Azurity disputes that Bionpharma suffered injuries or that Azurity was to blame. Novitium likely has documents that are relevant to this issue. For example, Azurity is seeking documents and deposition testimony to show that any claim by Bionpharma is mitigated by its failure to take reasonable steps to secure supply of its product. § II.C, *supra*. Information about Novitium's ability and willingness to supply Bionpharma, the negotiations between Novitium and Bionpharma (and how those negotiations evolved), and any internal manufacturing or sourcing issues faced by Novitium are all relevant to Bionpharma's claim that it was harmed by Azurity's settlement with Bionpharma's other supplier, CoreRx.

Azurity also seeks information relevant to damages such as the costs to on-board Novitium and the pricing to manufacture Bionpharma's generic ANDA product. This is important to rebut Bionpharma's likely damages theory that Azurity is responsible for these on-boarding and technology transfer costs. Similarly, Azurity seeks documents and testimony relating to how and when Bionpharma approached or solicited Novitium or vice versa. This is relevant to, *inter alia*, the timing of when Bionpharma decided to seek a new supplier, which is potentially relevant to

15

mitigation.

Additionally, Azurity is entitled to discovery regarding Novitium's views or analyses of the merits of the patent infringement litigation it faced from Azurity as well as Novitium's knowledge of Bionpharma's views or analyses of the various patent infringement litigations. Bionpharma has alleged that Azurity's patent claims against it were a sham; Azurity is entitled to test Bionpharma's conclusory allegation by obtaining discovery showing that Bionpharma and Novitium believed that Azurity's claims were not frivolous.

This supplier-discovery Azurity seeks through its subpoenas to Novitium is similar to the supplier-discovery the court allowed in the *Pfizer* case. In *Pfizer*, the plaintiff sought discrete, limited information relating to (1) quantities of product provided by the supplier and (2) testing done by the supplier. *Pfizer*, 2003 U.S. Dist. LEXIS 24806 at *6. The *Pfizer* court found that both categories were relevant, stating that the quantity information was highly relevant to *Pfizer*'s claim that "Mylan used salts provided by Reddy" and that the testing information was relevant because such information "would provide valuable support in defense of Mylan's charge of obviousness." *Id.* Similarly, Azurity has eight remaining document requests and eight remaining (substantively identical) deposition topics which seek discovery into three very limited and narrow areas: (1) information relating to Novitium's supplying of generic Epaned® to Bionpharma; (2) information relating

16

to costs, manufacture, and other similar such information for supplying of generic Epaned® for Bionpharma; and (3) information relating to the strength of Azurity's litigation positions in the various lawsuits between Azurity, Bionpharma, and Novitium. All three categories of information are relevant to rebutting Bionpharma's antitrust claims. Indeed, like the testing information in *Pfizer*, the information Azurity seeks from Novitium "would provide valuable support in defense" of Bionpharma's antitrust claims. *See id.*

Thus, as the Court in *Pfizer* found the subpoenaed information relevant and allowed discovery thereto, this Court should allow Azurity to take discovery from Novitium.

### B.  Novitium Has Not and Can Not Meet the Heavy Burden to Show That the Subpoenas Are Unreasonable Or Oppressive

Novitium has not carried its heavy burden to show that the subpoenas are unreasonable or oppressive. Novitium's objections vis-à-vis burden (both to the subpoenas themselves and to the substantively identical Rule 34 requests and Rule 30(b)(6) topics) are largely boilerplate and nonspecific. Such vague objections cannot satisfy Novitium's heavy burden in demonstrating unreasonableness and oppressiveness. *See, e.g., HMV Indy, LLC v. Inovateus Solar, LLC*, Case No. 2:20-mc-52-JDW, 2020 U.S. Dist. LEXIS 114685 at *5 (E.D. Penn. June 29, 2020) ("MBS . . . offers several formulations of the same objection: it would be burdensome to comply with the Subpoena. A party making such an objection has a

17

'heavy' burden of demonstrating that the subpoena is 'unreasonable or oppressive.' . . . MBS's boilerplate objections come nowhere close to satisfying this burden.") (citing *DIRECTV, Inc.,* 2005 U.S. Dist. LEXIS 43764 at \*7). Novitium's only substantive complaint on burden is that Bionpharma may have produced some of these documents already but, as explained below, that still fails to absolve Novitium of its obligations to properly respond to Azurity's subpoenas.

In short, Novitium cannot demonstrate that Azurity's subpoenas are unreasonable or oppressive because they are not. Azurity's requests are reasonable and tailored. Indeed, none of the factors used to assess oppressiveness demonstrate that these requests are unreasonable:

Azurity's need for the discovery: As explained above, Azurity needs this discovery to rebut part of Bionpharma's antitrust case. *See* § II.C *supra*. Moreover, much of this information—*i.e.* internal Novitium documents—falls outside the scope of party discovery as such information would not be within Bionpharma's possession, custody, or control. Novitium frustrated Azurity's attempts to obtain this information via party discovery. When Novitium was a party, Novitium refused to meaningfully participate in the discovery process and produced only four invoices. The fact that some information sought via the subpoenas *might* overlap with documents and information provided by Bionpharma does not obviate Azurity's need or impose additional burden on Novitium. Indeed, the *Pfizer* court rejected such

18

an argument and found that a party is entitled to corroborate the other party's information via supplier-discovery, even if such discovery may be duplicative. *Pfizer*, 2003 U.S. Dist. LEXIS 24806 at *6 ("Regarding need, only Reddy and Mylan can provide the relevant information requested. The fact that Pfizer requested the information from Mylan does not obviate the need to get information from Reddy as well. Pfizer has a right to seek to corroborate the information given by its party-opponent.").

The nature and importance of the litigation: No party disputes the importance of this litigation but, to underscore this importance, Azurity faces the threat of treble antitrust damages. *See* 15 U.S.C. § 15(a).

Relevance: As discussed above, this information is highly relevant to rebutting Bionpharma's antitrust claims. *See* §§ II.C, IV.A *supra*.

The breadth of the request for the production: Azurity's document requests and deposition topics are narrow and tailored to the remaining issues in the case. Indeed, Azurity is no longer seeking most of its initial requests and topics and has voluntarily dropped the majority of the subject matter from the as-served subpoenas. Azurity is now only seeking limited information relating to the antitrust counterclaims in the Bionpharma litigation. Each of Azurity's remaining document requests and deposition topics seek information directly related to one of three categories: (1) information relating to Novitium's supplying of generic Epaned® for

19

Bionpharma; (2) information relating to costs, manufacture, and other similar such information for supplying of generic Epaned® for Bionpharma; and (3) information relating to the strength of Azurity's litigation positions in the various lawsuits between Azurity, Bionpharma, and Novitium. *See* §§ II.C, IV.A *supra*. And, as explained below, Azurity's requests are not burdensome.

<u>The time period covered by the request</u>: Azurity's subpoenas are limited in time. Azurity only seeks documents and deposition testimony going back about a year ago, to when the relationship between Novitium and Bionpharma first started.

<u>The particularity with which documents are described</u>: Azurity's deposition topics are limited in scope. Only one request uses encompassing language in seeking "[a]ny proposals" sent from Bionpharma to Novitium. However, that particular topic itself is narrow as, presumably, there have only been a few proposals from Bionpharma relevant to this litigation. Azurity's document requests which likewise use encompassing language seek documents into similarly narrow subject matter.

<u>The burden imposed on the subpoenaed entity</u>: Novitium faces no significant burden in complying with these subpoenas. Novitium cannot claim surprise at having received the subpoena because, as just mentioned, Azurity served the subpoenas over a year ago and the parties had been meeting and conferring over nearly identical discovery requests just a few months ago. Novitium has, for the most part, not offered any particularity as to any undue burden it might face, which is fatal

20

to its opposition to this motion. *See HMV Indy*, 2020 U.S. Dist. LEXIS 114685 at *5.

Novitium has objected on the grounds that providing information in response to these subpoenas would be burdensome because Bionpharma has already provided such information, but Novitium cannot hide behind Bionpharma's productions. As an initial matter, Azurity is seeking internal Novitium documents as well as information shared with or by Bionpharma. While the latter category may overlap with some of Bionpharma's productions (though it is not clear that there would in fact be any overlap), the first category would not. More to the point, as shown in *Pfizer*, the fact that there is some overlap between party discovery and non-party discovery does not excuse a non-party from providing documents. *Pfizer*, 2003 U.S. Dist. LEXIS 24806 at *6. Indeed, this overlap is in fact useful as it can allow the party seeking non-party discovery to corroborate information provided from the opposing party. *Id.*

While there is no burden to Novitium, Novitium has imposed significant burden and cost on Azurity by engaging in obstreperous discovery tactics both when Novitium was a party and now. In addition to refusing to hand over any discovery except for four invoices, Novitium (represented by Bionpharma's counsel) has purposefully and needlessly raised the cost of the present dispute. For example, Azurity initially asked if Novitium would consent to having this dispute heard before

the District of Delaware in the Bionpharma lawsuit instead of forcing Azurity to bring this dispute in New Jersey. Not only did Novitium baselessly refuse, but Novitium later changed its mind, claiming that it would not oppose a motion to transfer the dispute to Delaware.  But even that position is designed to impose undue cost on Azurity because it forces Azurity to file one motion in New Jersey, brief the issue of transfer, and then pursue its motion in Delaware.

### C.    None Of the Remaining Factors Demonstrate That Novitium Should Be Excused From Compliance

None of the remaining circumstances where a party does not have to answer a subpoena exist in this case. Novitium is a New Jersey corporation based within 100 miles of the place of compliance on the subpoena. Azurity has given Novitium ample time for compliance—well over a year at this point. And Azurity is not seeking privileged information through the subpoena.

Thus, Novitium cannot demonstrate that the subpoenas are unreasonable or oppressive.

## V.    CONCLUSION

For the foregoing reasons, Azurity respectfully requests that the Court grant its motion in its entirety.

Dated: December 22, 2023                     Respectfully submitted,

                                            SAIBER LLC

22

Attorneys for Plaintiff Azurity
Pharmaceuticals, Inc.

*/s/ Arnold B. Calmann*
Arnold B. Calmann
Katherine A. Escanlar
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
T: (973) 622-3333
abc@saiber.com
kescanlar@saiber.com

OF COUNSEL:

Wendy L. Devine
Kristina M. Hanson
WILSON SONSINI
GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105
(415) 947-2000

Natalie J. Morgan
Granville C. Kaufman
WILSON SONSINI
GOODRICH & ROSATI, P.C.
12235 El Camino Real
Suite 200
San Diego, CA 92130-3002
(858) 350-2300

Jeffrey C. Bank
WILSON SONSINI
GOODRICH & ROSATI, P.C
1700 K Street NW, Fifth Floor
Washington, DC 20006
(202) 973-8800

23

*Attorneys for Plaintiff*
*Azurity Pharmaceuticals, Inc*